QUESTION & ANSWER ON

# FOREIGN SOVEREIGN IMMUNITIES ACT

**DISCLAIMER: THE INFORMATION IN THIS CIRCULAR IS PROVIDED FOR GENERAL INFORMATION ONLY AND MAY NOT BE TOTALLY ACCURATE IN A PARTICULAR CASE. QUESTIONS INVOLVING INTERPRETATION OF SPECIFIC FOREIGN LAWS SHOULD BE ADDRESSED TO FOREIGN COUNSEL.**

*Q. What is the role of the Department of State assist in effecting service on a foreign government?*

A. The Department of State, Overseas Citizens Services [formerly Special Consular Services, 22 CFR 93 (sic)], Office of Policy Review & Interagency Liaison is responsible for service under the Foreign Sovereign Immunities Act (FSIA) via the diplomatic channel in accordance with 28 U.S.C. Sec. 1608(a)(4) and implementing regulations (22 C.F.R. 93). In addition, the Department provides assistance under Sec. 1608(b) of the Act by providing information about service pursuant to a letter rogatory or applicable international convention on service. Service pursuant to the FSIA is a statutory obligation and provided the hierarchical methods of service set forth in Sec. 1608 have been followed, the U.S. consular officer has no discretion in complying with the Act. See 28 U.S.C. Section 1608(a)(4); H.R. Rep. No. 94-1487, 94th Cong., 2d Sess. (1976) reprinted in 1976 U.S. Code Cong. & Ad. News 6623; 22 C.F.R. Part 93.

*Q. What is the Foreign Sovereign Immunities Act?*

A. Foreign Sovereign Immunities Act of l976, Pub. L. 94-583, 90 Stat. 289l, 28 U.S.C. Sec. l330, l332(a), l39l(f) and l60l-l6ll [hereinafter the FSIA], limits the role of the Executive branch in suits against foreign governments and governmental entities by precluding the Department of State from making decisions on state immunity. By a circular note dated December 10, 1976, the Department informed all foreign embassies in Washington of the enactment of the FSIA (1976 Digest of United States Practice in International Law, Office of the Legal Adviser, U.S. Department of State, 327-328 (1977)). The US. Foreign Sovereign Immunities Act codifies the restrictive theory of immunity, incorporating criteria, which the courts had developed in applying the theory, while codifying and applying international law. (See ch. 5, Restatement 3rd, Foreign Relations Law of the United States, sec. 451-463, pp. 390, 435, American Law Institute (1986).) The Act prescribes the means of service for suits against a foreign State or agency and instrumentality in Section. For a discussion of the Act and its service provisions, See the American Law Institute (ALI)"s Restatement (Third) of the Foreign Relations Law of the United States, Chapter Five, Sec. 451, 460, pp. 390, 435 (general) (1986); Wright, Miller & Cooper, Federal Practice and Procedure, Jurisdiction and Related Matters 2d, Sec. 3662, note 7, pp. 385-385 (1985), pp. 370-371 (1997 Supp.); Wright and Miller, Federal Practice and Procedure, Civil 2d, Sec. 1111, pp. 199, 226 (1985), pp. 40, 41 (1997 Supp.); Born & Westin, International Civil Litigation in United States Courts, 335, 402 (1989); Delaume, Law and Practice of Transnational Contracts, Chapter VIII, Sec. 8.01-8.15, pp. 223, 280 (1988).

*Q. What is the restrictive theory of sovereign immunity?*

A. Under the U.S. legal system, however, the scope of a foreign state"s immunity is determined by judicial, rather than executive, authorities. A party"to a lawsuit, including a foreign state or its agency or instrumentality, is required to present defenses such as sovereign immunity directly to the court in which the case is pending. The immunity of a State from the jurisdiction of the courts of another State is an undisputed principle of customary international law. Until the twentieth century, sovereign immunity from the jurisdiction of foreign courts seemed to have no exceptions. However, as governments increasingly engaged in state-trading and various commercial activities, it was urged that the immunity of States engaged in such activities was not required by international law, and that it was undesirable: Immunity deprived private parties that dealt with a state of their judicial remedies, and gave states an unfair advantage in competition with private commercial enterprise. The restrictive principle of immunity spread rapidly after the Second World War. The United States moved to the restrictive theory in the early 1950"s, and

adopted it by statute in 1976 (the Foreign Sovereign Immunities Act). Under the restrictive theory of sovereign immunity, a State or State instrumentality is immune from the jurisdiction of the courts of another State, except with respect to claims arising out of activities of the kind that may be carried on by private persons. Under the restrictive theory, a State is immune from any exercise of judicial jurisdiction by another State in respect of claims arising out of governmental activities (de jure imperii); it is not immune from the exercise of such jurisdiction in respect of claims arising out of activities of a kind carried on by private persons (de jure gestionis).

*Q. What are the general exceptions to the jurisdictional immunity of a foreign State?*

A. Since the enactment of the Act in 1976, the general exceptions to the jurisdictional immunity of a foreign state have expanded, moving beyond the realm of "commercial activity". Most recently, P.L. 105-175 of May 11, 1998 further expanded the restrictive theory. Specifically, 28 U.S.C. 1605 now provides that a foreign state shall not be immune from the jurisdiction of courts of the United States or of the states in any case in which:

**1605(a) (1)** - explicit or implicit waiver of immunity by the foreign state;

**1605(a)(2)** - commercial activity carried on in the United States or an act performed in the United States in connection with a commercial activity elsewhere, or an act in connection with a commercial activity of a foreign state elsewhere that causes a direct effect in the United States;

**1605(a)(3)** - property taken in violation of international law is at issue;

**1605(a)(4)** - rights in property in the United States acquired by succession or gift or rights in immovable property situated in the United States are at issue;

**1605(a)(5)** - money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state;

**1605(a)(6)** - action brought to enforce an agreement made by the foreign state with or for the benefit of a private party to submit to arbitration;

**1605(a)(7)** - money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act, if the foreign state is designated as a state sponsor of terrorism under section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App 2405(j) or Section 620A of the Foreign Assistance Act of 1961 (22 U.S.C. 2371).

**1605(b)** - a suit in admiralty is brought to enforce a maritime lien against a vessel or cargo of the foreign state which maritime lien is based upon a commercial activity of the foreign state.

*Q. What is the difference between a foreign State, political subdivision, agency or instrumentality?*

**A.** Section 1330(a) of the Act gives federal district courts original jurisdiction in personam against foreign states, which are defined as including political subdivisions, agencies, and instrumentalities of foreign states. The Act provides distinct methods of service on a foreign state or political subdivision (28 USC 1608(a)) or service on an agency or instrumentality of a foreign state (28 USC 1608(b)). In order to serve the defendant, the claimant must determine into which category the defendant falls. If in doubt, a claimant should serve the defendant according to both sets of provisions. See Born & Westin, 340-344 (1989) and George, 19 Int"l Law. 51 (1985). The term "political subdivisions" includes all governmental units beneath the central government, including local governments according to the Act"s legislative history. Section 1603(b) defines an "agency or instrumentality" of a foreign state as an entity (1) which is a separate legal person, corporate or otherwise, and (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and (3) which is neither a citizen of the a state of the United States as defined in Sec. 1332(c) and (d) nor created under the laws of any third country. An instrumentality of a foreign state includes a corporation, association, or other juridical person a majority of whose shares or other ownership interests are owned by the state, even when organized for profit. For a discussion of the responsibilities of states for the obligations of their instrumentalities, see Restatement (Third) of the Foreign Relations Law of the United States, Sec. 452, p. 399-401 (1986). See also, the legislative history of the Act at 1976 U.S.

Code Cong. & Ad. News 6614-6618, in particular, which states in part: "[A]s a general matter, entities which meet the definition of an "agency or instrumentality of a foreign state" could assume a variety of forms, organizations, such as a shipping line or an airline, a steel company, a central bank, an export association, a governmental procurement agency or a department or ministry which acts and is suable in its own name. Id. at 6614. For a discussion of case law regarding the status of quasi-commercial entities in socialist states, see Born & Westin, p. 343-344 (1989); See also, Note, Breaking Out of the Capitalist Paradigm: The Significance of Ideology in Determining the Sovereign Immunity of Soviet and Eastern-Bloc Commercial Entities, 2 Hous. J. Int"l. L. 425 (1980); Note, Foreign Sovereign Immunity: Communist and Socialist Organizations - Effects of State"s System of Property Ownership on Determination of Agency or Instrumentality Status Under the Foreign Sovereign Immunities Act of 1976, 9 Ga. J. Int"l & Comp. L. 111 (1979); But see, *Yessenin-Bolpin v. Novosti Press Agency 443 F. Supp. 849, 852 (S.D.N.Y. 1978); Outboard Marine Corp. v. Pezetel, D.C. Del. 1978, 461 F. Supp. 384; Harris v. VAO Intourist Moscow, D.C. N.Y. 1979, 481 F. Supp. 1056; United Euram Corp. v. Union of Soviet Socialist Republics, D.C N.Y. 1978, 461 F. Supp. 609; S&S Mach. Co. v. Masinenexportimport, 706 F. 2d 411 (2d Cir.), cert. denied, 464 U.S. 850 (1983); Edlow Int"l Co. v. Nuklearna Elektrarna Krsko, 441 F Supp. 827 (D.D.C. 1977); Dayton v. Czechoslovak Socialist Republic, 834 F. 2d 203 (D.C. Cir. 1987).*

*Q. Is there a hierarchical order in which service must be attempted on a foreign State under the Act?*

**A.** The FSIA (28 U.S.C. Sec. 1608(a)(1)-(4) provides for service of process on foreign state defendants in a four-step, hierarchical manner: (I) pursuant to a special agreement between the plaintiff and the foreign state; (ii) as prescribed in an applicable international agreement; (iii) via mail from the court clerk to the head of the foreign state"s Ministry of Foreign Affairs; (iv) via the diplomatic channel. See, Ristau, International Judicial Assistance (Civil and Commercial), International Law Institute, Section 3-1-15, 74-75 (1995 ed.); Born & Westin, International Civil Litigation in United States Courts, 335, 402 (1989); Born, International Litigation, The International Lawyer"s Deskbook, American Bar Association, 288 (1996); Delaume, Law and Practice of Transnational Contracts, Sec. 8.02, 224, 225 (1988). The legislative history of and court cases concerning the FSIA are extensive. The FSIA clarifies the circumstances in which a foreign state will be immune from suit and embodies a federal long-arm statute pursuant to which in personam jurisdiction can be obtained over a foreign state, political subdivision, agency or instrumentality, provided that service of process is effected in compliance with the service provisions of the Act which are found at 28 U.S.C. l608(a). Service must be performed in a hierarchical manner --- if service cannot be made in accordance with l608(a)(l), then service is attempted pursuant to l608(a)(2) and so forth until the various methods are exhausted.

*Q. Are the methods described in section 1608(a)(4) exclusive? Can"t I just serve the foreign embassy or mission to the United Nations?*

*A.* **The FSIA provides the exclusive methods for effecting service of process on a foreign state, political subdivision, agency or instrumentality. See H.R. Rep. No. 94-1487, 94th Cong., 2d Sess. (1976), reprinted in 1976 U.S. Code Cong. & Ad. News 6604, 6622-23. Service on a foreign embassy in the United States or mission to the United Nations is not one of the methods of service provided in the Act.** For the proposition that service is governed by the statute see e.g., *Gray v. Permanent Mission of the People"s Republic of the Congo to the United Nations, 443 F. Supp. 816 (S.D.N.Y. 1978); 40 D 6262 Realty Corporation v. United Arab Emirates Government, 447 F. Supp. 710 (S.D.N.Y. 1978); Alberti v. Empresa Nicaraguense de la Carre, 705 F. 2d 250 (7th Cir. 1983).*

*Q. How much time does the foreign State have to reply once service has been effected?*

**A.** 28 USC 1608(d) provides that a foreign state has 60 days from the date service is effected in which to file an answer or other responsive pleading. The 60 day response period must be included in both the summons and the notice of suit where required.

*Q. Do I have to have documents translated?*

**A.** Section 1608(a)(3) and (4) require translation of the summons, complaint and notice of suit. Section 1608(b)(3) requires translation of the summons and complaint (and letter rogatory where applicable). Section 1608(e) requires translation of the default judgment and the notice of default judgment.

*Q. How do I effect service on a foreign State or political subdivision?*

**A.** The Act provides the following hierarchical steps for effecting service:

Service Pursuant to Special Arrangement: 28 U.S.C. 1608(a)(1) provides for service pursuant to special arrangement of the parties. Examples of such arrangements are found in V, G. Delaume, Transnational Contracts, Appendix (ed. 1981).

**Service Pursuant to Applicable International Convention: 28 U.S.C. 1608(a)(2)** provides for service under applicable international treaty or convention. There are two multilateral treaties on service of process.

(1) The Hague Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters , 20 UST 361; TIAS 6638; Martindale-Hubbell Law Directory (Law Digest Volume, Selected International Conventions); 28 USCA Appendix, Federal Rules of Civil Procedure, Rule 4;

(2) The Inter-American Convention on Letters Rogatory and Additional Protocol with Annex [regarding service of process], Senate Treaty Doc. 98-27; 98th Congress; 2d Session; 14 Int"l. Leg. Mat. 339 (March 1975).

The Department of State, Office of Overseas Citizens Services has information flyers concerning both these conventions available on our home page on the Internet or via our automated fax service at (202) 647-3000 using the phone on your fax machine. (Documents #1051 (Hague Service) or # 1208 (Inter-American)) or from our home page on the Internet.

"Special note should be made of two means which are currently in use in attempting to commence litigation against a foreign state ... (The) second means, of questionable validity, involves the mailing of a copy of a summons and complaint to a diplomatic mission in a foreign state. 28 U.S.C. Section 1608 precludes this method so as to avoid questions of inconsistency with Section 1 of article 22 of the Vienna Convention on Diplomatic Relations, 23 UST 3227, TIAS 7502 (1972), which entered into force in the United States on December 13, 1972. Service on an embassy by mail would be precluded under this bill. See 71 Department of State Bulletin 458-59 (1974)."

**Proviso: Formal Objection of Foreign State to Service by Mail Upon Accession to the Hague Service Convention:** If a foreign state which is a party to the Hague Service Convention formally objected to service by mail when it acceded to the Convention, service under Section 1608(a)(3) should not be attempted, and the plaintiff should proceed to service under Section 1608(a)(4), citing in the cover letter to the Department of State, Office of Overseas Citizens Services the foreign state"s objection to service by mail as noted in its accession to the Hague Service Convention.

To determine which foreign state has objected to service under Article 10(a) of the Hague Service Convention via postal channels, see our information on the Hague Service Convention and the Hague Conference on Private International Law web site .

**Service via Diplomatic Channels: 28 U.S.C. 1608(a)(4)** provides for service of a summons, complaint and notice of suit by way of the diplomatic channel if service could not be made by mail in accordance with Section 1608(a)(3) within 30 days. The Department of State will not accept a request for service under Section 1608(a)(4) if the other methods for service in Section 1608(a) have not been exhausted, if the documents are incomplete, or if requisite translations are not provided. The summons, complaint and notice of suit must be submitted to the Office of Policy Review & Interagency Liaison, Overseas Citizens Services, 2100 Pennsylvania Ave., NW 4FL, Washington, DC 20520 in duplicate. Requesting courts or plaintiff"s counsel should establish in writing to the Department that service has been attempted pursuant to 1608(a)(1), (2) and (3). Notification of such attempted service in the form of a letter to the Director, Office of Policy Review and Interagency Liaison will suffice. If service is attempted pursuant to Section 1608(a)(2), by applicable international convention, and service is denied by a foreign central authority for the convention, a copy of the denial should be furnished. As explained above, if service under Section 1608(a)(3) is inapplicable due to the foreign state"s formal objection upon accession to the Hague Service Convention, this fact should also be noted.

*Q. What is a Notice of Suit?*

A. 28 U.S.C. 1608(a)(3) and 1608(a)(4) require preparation of a "notice of suit". 22 CFR 93.2(e) provides a format for a notice of suit. There is no pre-printed form. 22 CFR 93.2(e) annex provides that a copy of the Foreign Sovereign Immunities Act must accompany the notice of suit.

*Q. How should a request for service under Section 1608(a)(4) be transmitted to the State Department?*

A. 28 U.S.C. 1608(a)(4) and 22 CFR 93.1 provide that the documents are sent to the Department of State by the clerk of court. In practice, some courts have local rules, which provide that such documents are transmitted directly by plaintiff's counsel rather than by the clerk of court. The Department of State accepts requests under Section 1608(a)(4) received under cover of a letter from either the clerk of court or counsel for the plaintiffs.

*Q. What is Proof of service via the diplomatic channel under Section 1608(a)(4)?*

*A.* **A certified copy of the diplomatic note transmitting the summons, complaint and notice of suit to the foreign state is forwarded by the Department of State, Office of Policy Review & Interagency Liaison, Overseas Citizens Services to the clerk of the court where the action is pending as proof of service. A copy is provided to plaintiff's counsel. See 22 CFR 93.1(e). But see** *Filus v. LOT Polish Airlines, E.D.N.Y. 1993, 819 F. Supp. 232; Jackson v. People''s Republic of China, D.C. Ala. 1982, 550 F. Supp. 869* .

*Q. How do I effect service on a foreign State with which the United States does not have diplomatic relations?*

A. The Foreign Sovereign Immunities Act makes no provision for service of process through diplomatic channels where there are no diplomatic relations between the United States and the foreign state. In practice, service has been accomplished where a protecting power arrangement exists, unless the protecting power was restricted to emergency consular protection services. See 22 C.F.R. 93.1(3). Consult the Department of State Office of Policy Review & Interagency Liaison, Overseas Citizens Services for guidance in such cases. See Restatement (Third) of the Law of the Foreign Relations of the United States, Sec. 457, p. 426, 427 (1986). See also, Digest of United States Practice in International Law 1980, Office of the Legal Adviser, U.S. Department of State, 552, 554 (1986); George, A Practical and Theoretical Analysis of Service of Process under the Foreign Sovereign Immunities Act, 19 Int'l Law. 70, 77 (1985); and Ascencio & Dry, An Assessment of the Service Provisions of the Foreign Sovereign Immunities Act of l976, 8 University of Notre Dame Journal of Legislation, 244, 246 (l981).

*Q. Do I have to follow a hierarchy regarding the methods of service under Section 1608(b)?*

A. See H.R. Rep. No. 94-1487, 94th Cong., 2d Sess., (1976), reprinted in part in 1976 U.S. Code Cong. & Ad. News 6604, 6624; see also, George, Practical and Theoretical Analysis of Service of Process Under FSIA, 19 Int'l Law. 55 (1985). The legislative history of Section 1608 is not specific on this point, stating in an overview of 1608(a) and (b) that "there is a hierarchy in the methods of service" but also stating generally under 1608(b) that "if there is no special arrangement and if the agency or instrumentality has no representative in the United States, service may be made under one of the three methods provided in subsection (b)(3)" (1976 U.S. Code Cong. & Ad. News 6623, 6624). Following the hierarchy, if there is no special arrangements for service between the plaintiff and the agency or instrumentality as contemplated by 1608(b)(1), service would then be attempted under Section 1608(b)(2) either by service on an agent in the United States or by applicable international convention on service of process.

*Q. How do I effect service on an agency or instrumentality of a foreign State (28 U.S.C. 1608(b)?*

A. 28 U.S.C. Section 1608(b) governs service on an agency or instrumentality of a foreign State.

**28 U.S.C. 1608(b)(1) provides for service by special arrangement between the plaintiff and the agency or instrumentality.** Examples of such arrangements are found in V, G. Delaume, Transnational Contracts, Appendix (ed. l981).

**28 U.S.C. 1608(b)(2)** offers three methods of service:

**[1] "by delivery of a copy of the summons and complaint either to an officer, a managing or general agent;"** or

94th Cong., 2d Sess., (1976), reprinted in part in 1976 U.S. Code Cong. & Ad. News, at 6604, et. seq. In particular, the Report states in pertinent part "if no such arrangements exists, than service must be made under subsection (b)(2) which provides for service upon officers, or managing, general or appointed agents in the United States of the agency or instrumentality". Id. at 6624. Section 1608(b)(2) does not offer a third alternative for service upon an agent abroad. If there is no agent in the United States to be served and no applicable international convention on service of judicial documents [1608(b)(2)], then service should be attempted under Section 1608(b)(3).

**[3] "in accordance with an applicable international convention on service of judicial documents."** There are two multilateral treaties on service of process.

(1) The <u>Hague Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters</u> , 20 UST 361; TIAS 6638; Martindale-Hubbell Law Directory (Law Digest Volume, Selected International Conventions); 28 USCA Appendix, Federal Rules of Civil Procedure, Rule 4;

(2) The <u>Inter-American Convention on Letters Rogatory</u> and Additional Protocol with Annex [regarding service of process], Senate Treaty Doc. 98-27; 98th Congress; 2d Session; 14 Int"l. Leg. Mat. 339 (March 1975).

The Department of State, Office of Overseas Citizens Services has information flyers concerning both these conventions and how to prepare and transmit a request for service in accordance with the conventions available via our autofax service (Documents #1051 (Hague Service) or # 1208 (Inter-American)) or from our home page on the Internet.

**28 U.S.C. 1608(b)(3) provides three alternative methods of service:**

**1608(b)(3)(A) pursuant to a letter rogatory;** If service is attempted under Section 1608(b)(3)(A), by letters rogatory, the request must be transmitted through the diplomatic channel, i.e., the Office of Policy Review and Interagency Liaison, Overseas Citizens Services, to the American Embassy in the country in question for transmittal to the Foreign Ministry. In cases under the FSIA, letters rogatory requests are handled exclusively by our Office of Policy Review and Inter-Agency Liaison. However, our general information flyer on preparation of letters rogatory (designed for cases other than the FSIA) will be of assistance. This is available via our home page on the Internet at http://travel.state.gov under <u>Judicial Assistance</u> or via our autofax service at (202) 647-3000 using the phone on your fax machine. (See "Additional Information" below.) **Ignore references in the "Preparation of Letters Rogatory" flyer to our Office of American Citizen Services and Crisis Management, as that office is not responsible for FSIA cases. Rather, transmit the request to the Office of Policy Review and Inter-Agency Liaison, Room 4817 N.S., Department of State, 2201 C Street, N.W., Washington, D.C. 20520.** The letter rogatory and accompanying documents (summons, complaint, and translations) should be submitted in duplicate (that is, one original in English with seal of court and signature of the judge, English photocopy and two copies of the translation.) No notice of suit is required. Effective June 1, 2002, there is a $650.00 consular fee for processing letters rogatory (See Federal Register, May 16, 2002, Volume 67, Number 95, Rules and Regulations, Pages 34831-34838; 22 CFR 22.1, item 51). Counsel are requested to submit a certified bank check in the amount of $650.00 payable to the U.S. Embassy (insert name of capital of the foreign country, for example, "U.S. Embassy Tokyo"). Personal checks are not acceptable.

**1608(b)(3)(B) by any form of mail** requiring a signed receipt to be addressed to the agency or instrumentality to be served. Because of the length of time involved in executing letters rogatory, courts may find it preferable to effect service on the agency or instrumentality under Section 1608(b)(3)(B) by international registered mail or other form of mail requiring a signed receipt addressed to the agency or instrumentality.

**Proviso: Formal Objection of Foreign State to Service by Mail Upon Accession to the Hague Service Convention:** If a foreign state which is a party to the Hague Service Convention formally objected to service by mail when it acceded to the Convention, service under Section 1608(b)(3)(B) should not be attempted, and the plaintiff should proceed to service under other methods available under Section 1608(b). If service is requested pursuant to a letter rogatory under Section 1608(b)(3)(A), the cover letter to the Department of State, Office of Overseas Citizens Services should cite the foreign state"s objection to

service by mail as noted in its accession to the Hague Service Convention. To determine which foreign state has objected to service under Article 10(a) of the Hague Service Convention via postal channels, see our information on the Hague Service Convention and the Hague Conference on Private International Law web site .

**1608(b)(3)(C) by order of the court in the United States consistent with the law of the place where service is to be made** . In the absence of a signed return receipt as proof of service, the plaintiff may find it necessary to proceed with Section 1608(b)(3)(A) and initiate the letter rogatory process or look to 1608(b)(3)(C) to ascertain whether there is any other method of service which the court may order consistent with the law of the place where service is to be made, i.e., the foreign country, such as service by agent or service by publication. The legislative history clarifies the meaning of the phrase "consistent with the laws of the place where service is to be made". [T]his latter language takes into account the fact that the laws of foreign countries may prohibit the service in their country of judicial documents by process servers from the United States. It is contemplated that no court will direct service upon a foreign state by appointing someone to make a physical attempt at service abroad, unless it is clearly consistent with the law of the foreign jurisdiction where service is to be attempted. It is also contemplated that the courts will not direct service in the United States upon diplomatic representatives (1976 U.S. Code Cong. & Ad. News 6624.), See also, *Hellenic Lines Ltd., v. Moore, 345 F. 2d 978 (D.C. Cir. 1965), or upon consular representatives, Oster v. Dominion of Canada, 144 F. Supp. 746 (N.D.N.Y. 1956), aff''d, 238 F. 2d 400 (2d Cir. 1956)*. Therefore, before service is attempted under Section 1608(b)(3)(C), the FSIA calls for the Court to look to the laws of the foreign state regarding service of documents, apparently to ensure that the judicial sovereignty of the foreign state is not violated inadvertently. As a practical matter, U.S. courts sometimes inquire concerning this method by contacting the Department of State for information regarding service under the laws of the foreign country. In addition to providing the court or plaintiff's counsel with available information on service, the Department often refers the inquirer to the law library of the Library of Congress and may provide the inquirer with a list of foreign attorneys who may be in a position to provide an authoritative opinion on the subject. It should be noted that the Department of State is not a repository of foreign laws.

*Q. How do I effect service of a default judgment or other documents?*

**A.** Section 1608(e) provides that once a default judgment has been entered, a copy shall be sent to the foreign state according to the methods set forth in section (a) and (b) of the Act. A "Notice of Default Judgment" shall be prepared utilizing the format prescribed in the Annex to 22 CFR 93.2. As a practical matter, if service has been attempted in accordance with the hierarchical methods set forth in Section 1608(a) in the initial phase of the action (service of the summons, complaint, and notice of suit) without success, necessitating service under Section 1608(a)(4) through the diplomatic channel, when service of a default judgment on the Foreign State becomes necessary, plaintiffs may transmit the request for service through the diplomatic channel to the Department of State, Overseas Citizens Services without repeating efforts at service under Section 1608(a)(1)-1608(a)(3).

**Q. Can I serve other documents through the diplomatic channel?**

*A.* **Requests for service via the diplomatic channel of documents other than the summons, complaint and notice of suit or the default judgment, not provided for in the Act, will be considered by the Department of State, Overseas Citizens Services, Office of Policy Review & Interagency Liaison on a case-by-case basis in coordination with the Office of the Legal Adviser for Diplomatic Law and Litigation.**

**Q. Where Can I Find Out More About the FSIA?**

**A.** These are some selected References:

Achebe, The Act of State Doctrine and Foreign Sovereign Immunities act of 1976: Can They Coexist?, 13 Maryland J. Int''l L. and Trace, 247, 300 (1989).

Ascencio & Dry, An Assessment of the Service Provisions of the Foreign Sovereign Immunities Act of l976, 8 University of Notre Dame Journal of Legislation, (l981).

Born & Westin, International Civil Litigation in United States Courts, 335, 402 (1989).

Born, International Litigation, The International Lawyer"s Deskbook, American Bar Association, 288 (1996).

Brock, The Foreign Sovereign Immunities Act: Defining a Role for the Executive, 30 Virginia J. of Int"l L. 795, 826 (1990).

Brower, Jurisdiction over Foreign Sovereigns: Litigation v. Arbitration, 17 Int"l. Law. 681, 686 (1983).

Christopher, State Responsibility and Non commercial Torts Under the Foreign Sovereign Immunities Act: Searching for an Applicable Respondeat Superior Doctrine Through Liu v. Republic of China, 27 Texas Int"l L.J. 137, 172 (1992).

Comment, Establishing Jurisdiction Under the Commercial Activities Exception to the Foreign Sovereign Immunities Act of 1976, 19 Hous. L. Rev. 1003 (1982).

Comment, Foreign Sovereign Immunity - Commercial Activities Exception, Foreign State Contracting to Provide Services Engaged in a "Commercial Activity" and Not Entitled to Foreign Sovereign Immunity under 28 U.S.C. 1605(A)(2). United Euram Corporation v. Union of Soviet Socialist Republics, 3 Suffolk T. L. J. 331 (1979).

Delaume, Economic Development and Sovereign Immunity, 79 Am. J. Int"l L. 319 (1985).

Dellapenna, Suing Foreign Governments and Their Corporations: Sovereign Immunity, 85 Com. L.J. 228 (1980).

Dellapenna, Foreign State Immunity in Europe, 5 N.Y. Int"l L. Rev. 51, 53 (1992).

Delaume, Law and Practice of Transnational Contracts, 223, 280 (1988).

Feldman, Amending the Foreign Sovereign Immunities Act: The ABA Position, 20 The Int"l Law. 1289, 1306 (1986).

Feldman, Foreign Sovereign Immunity in the United States Courts 1976-1986, 19 Vanderbilt J. of Transnat"l L. 19, 56 (1986).

Feldman, The United States Foreign Sovereign Immunities Act of 1976 in Perspective: A Founder"s View, 35 Int"l & Comp. L.Q. 302 (1986).

Felix, The Foreign Sovereign Immunities Act: Fair Play for Foreign States and the Need for Some Procedural Improvements, 8 Hous. J. Int"l L. 1, 2 (1985).

George, A Practical and Theoretical Analysis of Service of Process under the Foreign Sovereign Immunities Act, 19 Int"l Law. 49, 84 (1985).

Havkin, The Foreign Sovereign Immunities Act: The Relationship Between the Commercial Activity Exception and the Noncommercial Tort Exception in Light of De Sanchez v. Banco Central de Nicaragua, 10 Hastings Int"l & Comp. L.Rev. 455, 459 (1987).

Hoek, Foreign Sovereign Immunity and Saudi Arabia v. Nelson: A Practical Guide, 18 Hastings Int"l. and Comp. L. R. 617,633 (1995).

Janney, Recent Development, Obtaining Jurisdiction over Foreign Sovereigns: The Alien Tort Statute Meets the Foreign Sovereign Immunities act, 31 Harv. Int"l. L.J. 368 (1989).

Jurisdictional Immunities of States: U.S. Foreign Sovereign Immunities Act 1976, 11 C.L.B. 559 (No. 2) (1985).

Kane, Suing Foreign Sovereigns: A Procedural Compass, 34 Stan. L. Rev. 385 (1982).

Lacroix, The Theory and Practice of the foreign Sovereign Immunities act: Untying the Gordian Knot, 5 Int"l Tax & Bus. Law. 144 (1987).

Lee, Jurisdiction Over Foreign States for Act of Their Instrumentalities: A Model for Attributing Liability, 94 Yale Law Journal, 394, 414 (1984).

Nash, Digest of United States Practice in International Law 1976, Office of the Legal Adviser, U.S. Department of State, 320, 332 (1977).

Nash, Digest of United States Practice in International Law 1978, Office of the Legal Adviser, U.S. Department of State, 883, 914 (1980).

Nash, Digest of United States Practice in International Law 1979, Office of the Legal Adviser, U.S. Department of State, 894,897 (1981).

Nash, Digest of United States Practice in International Law 1980, Office of the Legal Adviser, U.S. Department of State, 505, 558 (1986).

Nash, Cumulative Digest of United States Practice in International Law 1981-1988, Vol. II, Office of the Legal Adviser, U.S. Department of State, 1564, 1664 (1994).

Note, Breaking Out of the Capitalist Paradigm: The Significance of Ideology in Determining the Sovereign Immunity of Soviet and Eastern-Bloc Commercial Entities, 2 Hous. J. Int"l. L. 425 (1980).

Note, Foreign Sovereign Immunity and Commercial Activity: A Conflicts Approach 83 Colum. L. Rev. 1440 (1983).

Note, Foreign Sovereign Immunity: Communist and Socialist Organizations - Effects of State"s System of Property Ownership on Determination of Agency or Instrumentality Status Under the Foreign Sovereign Immunities Act of 1976, 9 Ga. J. Int"l & Comp. L. 111 (1979); Note, Effects Jurisdiction Under the Foreign Sovereign Immunities Act and the Due Process Clause, 55 N.Y.U. L. Rev. 474 (1980).

Note, The Foreign Sovereign Immunities Act of 1976: Giving the Plaintiff His Day in Court, 46 Fordham L. Rev. 543, 547 (1977).

Note, Jurisdiction Over Foreign Governments: A Comprehensive Review of the Foreign Sovereign Immunities Act, 19 Vanderbilt J. Transnat"l L. 119, 179 (1986).

Note, Sovereign Immunity, 18 Harv. Int"l. L.J. 429 (1977).

Note, Sovereign Immunity in the Supreme Court: Using the Certiorari Process to Avoid Decision Making, 16 Va. J. Int"l. L. 903, 904-09, 920-24 (1976).

Paulson, The Letelier Case: Foreign Sovereign Liability for Acts of Political Assassination; 21 Va. J. Int"l. L., 251,268 (1981).

Riesenfeld, Sovereign Immunity in Perspective, 19 Vanderbilt J. Transnat"l L. 1, 18 (1986).·

Ristau, International Judicial Assistance (Civil and Commercial), International Law Institute, Section 3-1-15, 74-75 (1995).

Singer, Terrorism, Extradition, and FSIA Relief: The Letelier Case, 19 Vanderbilt J. Transnat"l L. 57, 82 (1986).

Somarajah, Problems in Applying the Restrictive Theory of Sovereign Immunity, 31 Int"l and Comp. L. Q. 661, 685 (1982).

Tate, Letter from Jack B. Tate, Acting Legal Adviser of the Department of State, to Philip B. Perlman, Acting Attorney General of the United States (May 19, 1952) 26 Dep"t of State Bull. 984-85 (1952).

Trooboff, Foreign State Immunity: Emerging Consensus on Principles, 200 R.C.A.D.I. 235, 255-71 (1986).

Von Mehren, The Foreign Sovereign Immunities Act of 1976, 17 Colum. J. Transnat"l L. 33, 36-37 (1978).

**Q. How can I get information from your autofax and home page services?**

**A.** Overseas Citizens Services has available general information flyers on international judicial assistance many of which are available through our automated fax system or via our Internet Consular Affairs home page. These topics include country-specific information about service of process and obtaining evidence abroad.

**Using the Autofax System:**

* Dial (202) 647-3000 using the phone on your fax machine.

* Follow the prompts to obtain the catalog of documents.

**Using the Internet:** Many of our judicial assistance flyers are also available on the Internet via the Department of State, Bureau of Consular Affairs home page at http://travel.state.gov under Judicial Assistance . See also, the Department of State, Office of the Legal Adviser for Private International Law home page for information regarding private international law unification. See also the home pages for many of our embassies.

*Q. Where can I find information on the Internet about applicable treaties?*

**A. Information on which countries are party to a particular treaty is available from the following databases:**

United States Department of State, Office of the Legal Adviser, Treaty Affairs, List of Treaties and Other International Agreements of the United States In Force:
http://www.state.gov/www/global/legal_affairs/tifindex.html

United Nations (UN): Databases/Treaties

Hague Conference on Private International Law :

Council of Europe (COE): under Texts/Treaties

Organization of American States (OAS): under Documents/Treaties and Conventions

*Q. Who do I contact with further questions?*

**A.** For additional information, contact the Office of Policy Review & Interagency Liaison, Room 48l7, Department of State, 2201 C Street N.W., Washington, D.C. 20520, telephone (202) 647-3666 or 202-647-3683.

**Q. Where should requests for service under Section 1608(a)(4) or 1608(b)(3)(A)?**

**A.** Requests for service under Section 1608(a)(4), Section 1608(e) or Section 1608(b)(3)(A) of the Act should be submitted to the Office of Policy Review & Interagency Liaison, Room 48l7, Department of State, 2201 C Street, N.W., Washington, D.C. 20520.

*Q. How many copies are required?*

**A.** You need to send two sets of the documents. One will be served. The other will be returned with a copy of the proof of service. Documents include:

**For Service Under Section 1608(a)(4):**

**Set 1:**

a. Summons (English, Bearing Seal of Court and Signature of Judge or Clerk)

b. Complaint (English)

c. Notice of Suit (English, See 22 CFR 93)

d. Translations of all of the above

**Set 2:**
Photocopies of all of the above (Summons, Complaint, Notice of Suit, and translations of each.)

**For Service Under Section 1608(b)(3)(A)**

**Set 1:**

a. Letter Rogatory bearing seal of court and signature of judge. (English)

b. Summons (bearing seal of court and signature of clerk) (English)

c. Complaint (English)

e. Check in the amount of $650 for each letter rogatory to be transmitted payable to the U.S. Embassy in the foreign country (for example, U.S. Embassy London).

**Set 2:**

Photocopies of all of the above (Letter Rogatory, Summons, Complaint and translations of each)

*Q. Are there any fees associated with a service requested under the Act?*

**A.** Effective June 1, 2002 there is a fee of $650.00 for processing Foreign Sovereign Immunities Act cases under Section 1608(a)(4) for service on a foreign state or political subdivision. See Federal Register, May 16, 2002, Volume 67, Number 95, Rules and Regulations, Pages 34831-34838; 22 CFR 22.1, item 51). For transmittal of letters rogatory for service on an agency or instrumentality of a foreign State under Section 1608(b)(3)(A) there is a requisite fee under the Schedule of Fees, 22 CFR 22.01, Item 51 of $650.00. Fees are payable by certified check or corporate check to the U.S. Embassy in the foreign country, for example, U.S. Embassy London. Therefore, if a request is made for service on a foreign state or political subdivision under Section 1608(a)(4) and on an agency or instrumentality of a foreign state under Section 1608(b)(3)(A) pursuant to a letter rogatory, both fees would apply.

---

**US Foreign Sovereign Immunities Act, as amended 1997**

---

**UNITED STATES CODE**

**TITLE 28. JUDICIARY AND JUDICIAL PROCEDURE**

**PART IV--JURISDICTION AND VENUE**

**CHAPTER 85--DISTRICT COURTS; JURISDICTION**

§ 1330. Actions against foreign states

**(a)** The district courts shall have original jurisdiction without regard to amount in controversy of any non jury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605-1607 of this title or under any applicable international agreement.

**(b)** Personal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction under subsection (a) where service has been made under section 1608 of this title.

**(c)** For purposes of subsection (b), an appearance by a foreign state does not confer personal jurisdiction with respect to any claim for relief not arising out of any transaction or occurrence enumerated in sections 1605-1607 of this title.

The Congress finds that the determination by United States courts of the claims of foreign states to immunity from the jurisdiction of such courts would serve the interests of justice and would protect the rights of both foreign states and litigants in United States courts. Under international law, states are not immune from the jurisdiction of foreign courts insofar as their commercial activities are concerned, and their commercial property may be levied upon for the satisfaction of judgments rendered against them in connection with their commercial activities. Claims of foreign states to immunity should henceforth be decided by courts of the United States and of the States in conformity with the principles set forth in this chapter.

## § 1603. Definitions

For purposes of this chapter--

(a) A "foreign state", except as used in section 1608 of this title, includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b).

(b) An "agency or instrumentality of a foreign state" means any entity--

(1) which is a separate legal person, corporate or otherwise, and

(2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and

(3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (d) of this title, nor created under the laws of any third country.

(c) The "United States" includes all territory and waters, continental or insular, subject to the jurisdiction of the United States.

(d) A "commercial activity" means either a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose.

(e) A "commercial activity carried on in the United States by a foreign state" means commercial activity carried on by such state and having substantial contact with the United States.

## § 1604. Immunity of a foreign state from jurisdiction

Subject to existing international agreements to which the United States is a party at the time of enactment of this Act a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter.

## § 1605. General exceptions to the jurisdictional immunity of a foreign state

(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case--

(1) in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver;

(2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States;

(3) in which rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state; or that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States;

(4) in which rights in property in the United States acquired by succession or gift or rights in immovable property situated in the United States are in issue;

(5) not otherwise encompassed in paragraph (2) above, in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment; except this paragraph shall not apply to--

(A) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused, or

(B) any claim arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights;

(6) in which the action is brought, either to enforce an agreement made by the foreign state with or for the benefit of a private party to submit to arbitration all or any differences which have arisen or which may arise between the parties with respect to a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration under the laws of the United States, or to confirm an award made pursuant to such an agreement to arbitrate, if (A) the arbitration takes place or is intended to take place in the United States, (B) the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards, (C) the underlying claim, save for the agreement to arbitrate, could have been brought in a United States court under this section or section 1607, or (D) paragraph (1) of this subsection is otherwise applicable; or

(7) not otherwise covered by paragraph (2), in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources (as defined in section 2339A of title 18) for such an act if such act or provision of material support is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency, except that the court shall decline to hear a claim under this paragraph--

(A) if the foreign state was not designated as a state sponsor of terrorism under section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. 2405(j)) or section 620A of the Foreign Assistance Act of 1961 (22 U.S.C. 2371) at the time the act occurred, unless later so designated as a result of such act; and

(B) even if the foreign state is or was so designated, if--

(i) the act occurred in the foreign state against which the claim has been brought and the claimant has not afforded the foreign state a reasonable opportunity to arbitrate the claim in accordance with accepted international rules of arbitration; or

(b) A foreign state shall not be immune from the jurisdiction of the courts of the United States in any case in which a suit in admiralty is brought to enforce a maritime lien against a vessel or cargo of the foreign state, which maritime lien is based upon a commercial activity of the foreign state: Provided, That--

(1) notice of the suit is given by delivery of a copy of the summons and of the complaint to the person, or his agent, having possession of the vessel or cargo against which the maritime lien is asserted; and if the vessel or cargo is arrested pursuant to process obtained on behalf of the party bringing the suit, the service of process of arrest shall be deemed to constitute valid delivery of such notice, but the party bringing the suit shall be liable for any damages sustained by the foreign state as a result of the arrest if the party bringing the suit had actual or constructive knowledge that the vessel or cargo of a foreign state was involved; and

(2) notice to the foreign state of the commencement of suit as provided in section 1608 of this title is initiated within ten days either of the delivery of notice as provided in paragraph (1) of this subsection or, in the case of a party who was unaware that the vessel or cargo of a foreign state was involved, of the date such party determined the existence of the foreign state's interest.

(c) Whenever notice is delivered under subsection (b)(1), the suit to enforce a maritime lien shall thereafter proceed and shall be heard and determined according to the principles of law and rules of practice of suits in rem whenever it appears that, had the vessel been privately owned and possessed, a suit in rem might have been maintained. A decree against the foreign state may include costs of the suit and, if the decree is for a money judgment, interest as ordered by the court, except that the court may not award judgment against the foreign state in an amount greater than the value of the vessel or cargo upon which the maritime lien arose. Such value shall be determined as of the time notice is served under subsection (b)(1). Decrees shall be subject to appeal and revision as provided in other cases of admiralty and maritime jurisdiction. Nothing shall preclude the plaintiff in any proper case from seeking relief in personam in the same action brought to enforce a maritime lien as provided in this section.

(d) A foreign state shall not be immune from the jurisdiction of the courts of the United States in any action brought to foreclose a preferred mortgage, as defined in the Ship Mortgage Act, 1920 (46 U.S.C. 911 and following). Such action shall be brought, heard, and determined in accordance with the provisions of that Act and in accordance with the principles of law and rules of practice of suits in rem, whenever it appears that had the vessel been privately owned and possessed a suit in rem might have been maintained.

(e) For purposes of paragraph (7) of subsection (a)--

(1) the terms "torture" and "extrajudicial killing" have the meaning given those terms in section 3 of the Torture Victim Protection Act of 1991;

(2) the term "hostage taking" has the meaning given that term in Article 1 of the International Convention Against the Taking of Hostages; and

(3) the term "aircraft sabotage" has the meaning given that term in Article 1 of the Convention for the Suppression of Unlawful Acts Against the Safety of Civil Aviation.

(f) No action shall be maintained under subsection (a)(7) unless the action is commenced not later than 10 years after the date on which the cause of action arose. All principles of equitable tolling, including the period during which the foreign state was immune from suit, shall apply in calculating this limitation period.

**(g) Limitation on discovery.--**

**(1) In general.--(A)** Subject to paragraph (2), if an action is filed that would otherwise be barred by section 1604, but for subsection (a)(7), the court, upon request of the Attorney General, shall stay any request, demand, or order for discovery on the United States that the Attorney General certifies would significantly interfere with a criminal investigation or prosecution, or a national security operation, related to the incident that gave rise to the cause of action, until such time as the Attorney General advises the court that such request, demand, or order will no longer so interfere.

**(B)** A stay under this paragraph shall be in effect during the 12-month period beginning on the date on which the court issues the order to stay discovery. The court shall renew the order to stay discovery for additional 12-month periods upon motion by the United States if the Attorney General certifies that discovery would significantly interfere with a criminal investigation or prosecution, or a national security operation, related to the incident that gave rise to the cause of action.

**(2) Sunset.--(A)** Subject to subparagraph (B), no stay shall be granted or continued in effect under paragraph (1) after the date that is 10 years after the date on which the incident that gave rise to the cause of action occurred.

**(B)** After the period referred to in subparagraph (A), the court, upon request of the Attorney General, may stay any request, demand, or order for discovery on the United States that the court finds a substantial likelihood would--

**(i)** create a serious threat of death or serious bodily injury to any person;

**(ii)** adversely affect the ability of the United States to work in cooperation with foreign and international law enforcement agencies in investigating violations of United States law; or

**(iii)** obstruct the criminal case related to the incident that gave rise to the cause of action or undermine the potential for a conviction in such case.

**(3) Evaluation of evidence.--**The court's evaluation of any request for a stay under this subsection filed by the Attorney General shall be conducted ex parte and in camera.

**(4) Bar on motions to dismiss.--**A stay of discovery under this subsection shall constitute a bar to the granting of a motion to dismiss under rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure.

**(5) Construction.--**Nothing in this subsection shall prevent the United States from seeking protective orders or asserting privileges ordinarily available to the United States.

### § 1606. Extent of liability

As to any claim for relief with respect to which a foreign state is not entitled to immunity under section 1605 or 1607 of this chapter, the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances; but a foreign state except for an agency or instrumentality thereof shall not be liable for punitive damages; if, however, in any case wherein death was caused, the law of the place where the action or omission occurred provides, or has been construed to provide, for damages only punitive in nature, the foreign state shall be liable for actual or compensatory damages measured by the pecuniary injuries resulting from such death which were incurred by the persons for whose benefit the action was brought.

### § 1607. Counterclaims

(a) for which a foreign state would not be entitled to immunity under section 1605 of this chapter had such claim been brought in a separate action against the foreign state; or

(b) arising out of the transaction or occurrence that is the subject matter of the claim of the foreign state; or

(c) to the extent that the counterclaim does not seek relief exceeding in amount or differing in kind from that sought by the foreign state.

### § 1608. Service; time to answer; default

(a) Service in the courts of the United States and of the States shall be made upon a foreign state or political subdivision of a foreign state:

(1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision; or

(2) if no special arrangement exists, by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents; or

(3) if service cannot be made under paragraphs (1) or (2), by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned, or

(4) if service cannot be made within 30 days under paragraph (3), by sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services--and the Secretary shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted.

As used in this subsection, a "notice of suit" shall mean a notice addressed to a foreign state and in a form prescribed by the Secretary of State by regulation.

(b) Service in the courts of the United States and of the States shall be made upon an agency or instrumentality of a foreign state:

(1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the agency or instrumentality; or

(2) if no special arrangement exists, by delivery of a copy of the summons and complaint either to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process in the United States; or in accordance with an applicable international convention on service of judicial documents; or

(3) if service cannot be made under paragraphs (1) or (2), and if reasonably calculated to give actual notice, by delivery of a copy of the summons and complaint, together with a translation of each into the official language of the foreign state--

**(A)** as directed by an authority of the foreign state or political subdivision in response to a letter rogatory or request or

**(B)** by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the agency or instrumentality to be served, or

**(C)** as directed by order of the court consistent with the law of the place where service is to be made.

**(c)** Service shall be deemed to have been made--

**(1)** in the case of service under subsection (a)(4), as of the date of transmittal indicated in the certified copy of the diplomatic note; and

**(2)** in any other case under this section, as of the date of receipt indicated in the certification, signed and returned postal receipt, or other proof of service applicable to the method of service employed.

**(d)** In any action brought in a court of the United States or of a State, a foreign state, a political subdivision thereof, or an agency or instrumentality of a foreign state shall serve an answer or other responsive pleading to the complaint within sixty days after service has been made under this section.

**(e)** No judgment by default shall be entered by a court of the United States or of a State against a foreign state, a political subdivision thereof, or an agency or instrumentality of a foreign state, unless the claimant establishes his claim or right to relief by evidence satisfactory to the court. A copy of any such default judgment shall be sent to the foreign state or political subdivision in the manner prescribed for service in this section.

### § 1609. Immunity from attachment and execution of property of a foreign state

Subject to existing international agreements to which the United States is a party at the time of enactment of this Act the property in the United States of a foreign state shall be immune from attachment arrest and execution except as provided in sections 1610 and 1611 of this chapter.

### § 1610. Exceptions to the immunity from attachment or execution

**(a)** The property in the United States of a foreign state, as defined in section 1603(a) of this chapter, used for a commercial activity in the United States, shall not be immune from attachment in aid of execution, or from execution, upon a judgment entered by a court of the United States or of a State after the effective date of this Act, if--

**(1)** the foreign state has waived its immunity from attachment in aid of execution or from execution either explicitly or by implication, notwithstanding any withdrawal of the waiver the foreign state may purport to effect except in accordance with the terms of the waiver, or

**(2)** the property is or was used for the commercial activity upon which the claim is based, or

**(3)** the execution relates to a judgment establishing rights in property which has been taken in violation of international law or which has been exchanged for property taken in violation of international law, or

**(4)** the execution relates to a judgment establishing rights in property--

**(A)** which is acquired by succession or gift, or

**(B)** which is immovable and situated in the United States: Provided, That such property is not used for purposes of maintaining a diplomatic or consular mission or the residence of the Chief of such mission, or

**(5)** the property consists of any contractual obligation or any proceeds from such a contractual obligation to indemnify or hold harmless the foreign state or its employees under a policy of automobile or other liability or casualty insurance covering the claim which merged into the judgment, or

**(6)** the judgment is based on an order confirming an arbitral award rendered against the foreign state, provided that attachment in aid of execution, or execution, would not be inconsistent with any provision in the arbitral agreement, or

**(7)** the judgment relates to a claim for which the foreign state is not immune under section 1605(a)(7), regardless of whether the property is or was involved with the act upon which the claim is based.

**(b)** In addition to subsection (a), any property in the United States of an agency or instrumentality of a foreign state engaged in commercial activity in the United States shall not be immune from attachment in aid of execution, or from execution, upon a judgment entered by a court of the United States or of a State after the effective date of this Act, if--

**(1)** the agency or instrumentality has waived its immunity from attachment in aid of execution or from execution either explicitly or implicitly, notwithstanding any withdrawal of the waiver the agency or instrumentality may purport to effect except in accordance with the terms of the waiver, or

**(2)** the judgment relates to a claim for which the agency or instrumentality is not immune by virtue of section 1605(a) (2), (3), (5), or (7) or 1605(b) of this chapter, regardless of whether the property is or was involved in the act upon which the claim is based.

**(c)** No attachment or execution referred to in subsections (a) and (b) of this section shall be permitted until the court has ordered such attachment and execution after having determined that a reasonable period of time has elapsed following the entry of judgment and the giving of any notice required under section 1608(e) of this chapter.

**(d)** The property of a foreign state, as defined in section 1603(a) of this chapter, used for a commercial activity in the United States, shall not be immune from attachment prior to the entry of judgment in any action brought in a court of the United States or of a State, or prior to the elapse of the period of time provided in subsection (c) of this section, if--

**(1)** the foreign state has explicitly waived its immunity from attachment prior to judgment, notwithstanding any withdrawal of the waiver the foreign state may purport to effect except in accordance with the terms of the waiver, and

**(2)** the purpose of the attachment is to secure satisfaction of a judgment that has been or may ultimately be entered against the foreign state, and not to obtain jurisdiction.

**(e)** The vessels of a foreign state shall not be immune from arrest in rem, interlocutory sale, and execution in actions brought to foreclose a preferred mortgage as provided in section 1605(d).

## § 1611. Certain types of property immune from execution

**(a)** Notwithstanding the provisions of section 1610 of this chapter, the property of those organizations designated by the President as being entitled to enjoy the privileges, exemptions, and immunities provided by the International Organizations Immunities Act shall not be subject to attachment or any other judicial

process impeding the disbursement of funds to, or on the order of, a foreign state as the result of an action brought in the courts of the United States or of the States.

(b) Notwithstanding the provisions of section 1610 of this chapter, the property of a foreign state shall be immune from attachment and from execution, if--

(1) the property is that of a foreign central bank or monetary authority held for its own account, unless such bank or authority, or its parent foreign government, has explicitly waived its immunity from attachment in aid of execution, or from execution, notwithstanding any withdrawal of the waiver which the bank, authority or government may purport to effect except in accordance with the terms of the waiver; or

(2) the property is, or is intended to be, used in connection with a military activity and

(A) is of a military character, or

(B) is under the control of a military authority or defense agency.

(c) Notwithstanding the provisions of section 1610 of this chapter, the property of a foreign state shall be immune from attachment and from execution in an action brought under section 302 of the Cuban Liberty and Democratic Solidarity (LIBERTAD) Act of 1996 to the extent that the property is a facility or installation used by an accredited diplomatic mission for official purposes.

## Ch. 9 Suing Non-U.S. Governmental Entities in U.S. Courts

### IV. The FSIA Institutes a "Restrictive" Theory of Sovereign Immunity

A. The FSIA purposefully restricts sovereign immunity so that private parties dealing with or injured by foreign states, particularly in commercial transactions, may obtain judicial relief. *See, e.g. Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 487 (1983); *See also* H.R. Rep. 94-1487, *reprinted in* 1976 U.S.C.C.A.N. 6604, 6605 (Sep. 9. 1976) (FSIA "codif[ies]" principle that immunity "does not extend to suits based on its commercial or private acts (*jure gestionis*).").

B. Importantly, unlike other types of immunity, since 1976, the FSIA places immunity decisions solely in the hands of the courts and solely as a matter of statutory interpretation. *See, e.g., Dole Food v. Patickson*, 538 U.S. 468, 479 (2003) (rejecting policy-based arguments in favor of ordinary application of statute).

C. The shift to statutory-based immunity provides an argument that diplomatic and foreign policy considerations are irrelevant. *Id.*